Michael F. Ram (SBN 104805)
Marie N. Appel (SBN 187483)
John A. Yanchunis (*To Be Admitted Pro Hac Vice*)
Patrick A. Barthle (*To Be Admitted Pro Hac Vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone:   (415) 358-6913
Facsimile:   (415) 358-6923
Email:        jyanchunis@forthepeople.com
                 mram@forthepeople.com
                 mappel@forthepeople.com
                 pbarthle@forthepeople.com

Joel R. Rhine (*To Be Admitted Pro Hac Vice*)
Martin A. Ramey, Esq. (SBN 221042)
Janet R. Coleman (*To Be Admitted Pro Hac Vice*)
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Telephone:   (910) 772-9960
Email:        mjr@rhinelawfirm.com
                 jrr@rhinelawfirm.com
                 jrc@rhinelawfirm.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SADIA CALIXTE, GREGORY HURLING, JVANNE RHODES, FREDDIE TALLEY and ORAL TALLEY, *individually and on behalf of all others similarly situated,*<br><br>                    Plaintiffs,<br><br>v.<br><br>DAVE INC.,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs SAIDA CALIXTE, GREGORY HURLING, JVANNE RHODES, FREDDIE TALLEY and ORAL TALLEY (together, "PLAINTIFFS"), individually and on behalf of all other persons similarly situated, and through their attorneys of records, bring this class action lawsuit against Defendant DAVE INC. ("Defendant" or "DAVE"), and allege, based upon information and belief and the investigation of their counsel as follows:

## PARTIES

1.     Plaintiff SADIA CALIXTE is a citizen and resident of Wayne County, North Carolina.  She has been an avid user of the DAVE app for approximately two years. On or about July 25, 2020, Plaintiff CALIXTE received notice of the blog post that same day and of the Notice of Data Breach, dated August 21, 2020.

2.     Plaintiff CALIXTE also received a number of alerts regarding an attempted log-in to her e-mail accounts shortly following the breach.  Plaintiff believes that these attempts, which emanated from California, were an attempt to set up additional accounts, to change her current passwords or to establish new accounts from which her identify could be stolen.

3.     As a result of these alerts, Plaintiff CALIXTE undertook to change her passwords on her accounts, and to monitor her bank records for any suspicious activity.  One of the primary reasons Plaintiff CALIXTE used the DAVE's app was to help build credit for recurring monthly payments, such as rent, which DAVE reported to the major credit bureaus so that she would have sufficient credit to purchase a home.   Knowing that her data might be compromised, Plaintiff CALIXTE enrolled in an identity theft protection service. Because she is worried that someone with her PII will be able to open accounts without her  permission and/or change her log-in credentials, she is monitoring her accounts for any sign of fraudulent activity.

4.     Plaintiff GREGORY HURLING is also a citizen and resident of

Wayne County, North Carolina.  Like his wife, Plaintiff CALIXTE, Plaintiff HURLING, has likewise been affected in that he has had to spend time ensuring that his passwords and accounts are not modified without his permission.  He, too, has enrolled in an identity theft protection program and continues to monitor his accounts on a daily basis.

5.     JVANNE RHODES is a citizen and resident of Dallas County, Texas. Plaintiff JVANNE RHODES has been a DAVE app user for more than a year, linking her checking account with a national bank to the DAVE app.

6.     Shortly after the breach occurred, her bank notified her that her card had been compromised in the breach, and the bank cancelled her card before reissuing it.  When Plaintiff RHODES checked her balance and transactions against her bank statement, she discovered multiple charges coming out of her banking account via the DAVE app that were not related to her monthly subscription.  Plaintiff is worried that hackers have decrypted her data and are actively trying to establish fraudulent accounts.

7.     Plaintiff FREDDIE TALLEY is a citizen and resident of Pitt County, North Carolina.  Plaintiff TALLEY had several accounts undergo a password reset, even though he did not authorize them.  Further, within the last month and a half, he attempted to purchase a car only to learn that his Social Security Number had been associated with someone else.

8.     As a result, Plaintiff FREDDIE TALLEY has contacted nearly all of his creditors, banks and other service providers to ensure that his passwords have not been changed.  He has signed up for the identity theft protection program offered by DAVE and he worries that his Social Security number has been compromised, as recently, he was contacted to verify certain personal information prior to credit being extended.

9.     Plaintiff ORAL TALLEY is also a citizen and resident of Wayne County, North Carolina.  On or about August 21, 2020, Plaintiff TALLEY

received an e-mail Notice of Data Breach.  A true and correct copy of that notice is attached hereto as Exhibit "A".

10.     Plaintiff ORAL TALLEY likewise experienced alarming and repeated spam calls to her residence shortly following the breach.  These calls were made by businesses with whom Plaintiff ORAL TALLEY has had no prior business.  Plaintiffs attribute these events to the Data Breach given the recency of the calls and the dates of the breach.   Like her son, Plaintiff ORAL TALLEY has enrolled in an identity theft protection program, and worries that someone will use her PII to open new accounts.   She continues to spend time monitoring her accounts.

11.     All of the above Plaintiffs were DAVE app users at the time of the Data Breach, and all received the same e-mail notice of the breach as did Plaintiff CALIXTE.

12.     Defendant DAVE INC. is a Delaware corporation, authorized to do business in California.  The company maintains its principal executive office and headquarters at 1265 S. Cochran Avenue, Los Angeles.

### JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

14.     This Court has personal jurisdiction over DAVE, because it is authorized to and regularly conducts business in California and maintained its principal executive office and headquarters in Los Angeles.

15.     Venue is further proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions complained of herein and giving rise to Plaintiffs' claims occurred in this District.

**FACTUAL BACKGROUND**

16.    DAVE is commonly known as a mobile application ("app") created and marketed by the Defendant that has grown in popularity with the general public since 2016.

17.    Launched in 2016, as a Delaware corporation, DAVE differentiates from other "fintech" apps by focusing on overdraft protection as a major feature, requiring a much more rigorous application process which requires users to pass an income check and a review of the application's checking history prior to approval.

18.    Among its competitors in the mobile banking and financial tech arena, it has widely been acknowledged as one of the more successful apps, providing cash advances and other financial services to its users that fall outside of the traditional banking system.

19.    As a result of DAVE's enhanced application process, users such as the Plaintiffs and other Class Members trust the platform with more personally sensitive information than other prepaid debit cards and fintech apps. For example, DAVE requires ongoing access to each user's checking account(s) in order to monitor for potential overdrafts, comparing established user spending patterns to the user's remaining balance and issuing warnings in advance when estimated expenses stand a chance of exceeding that balance. The app also offers a form of payday loan when an overdraft is anticipated.

20.    On or about July 25, 2020, DAVE notified its users via a company blog post[1] that a former third-party service provider had been the victim of a cyberattack by hackers and that the hackers had gained unauthorized access to data on DAVE's platform, including but not limited to, passwords that were

---

[1] https://dave.com/blog/post/ (last visited August 23, 2020).

stored in hash form, using brcypt.

21.     Before they were discovered, the hackers exfiltrated data that is believed to include not only the names of DAVE users, but their e-mails, their dates of birth, their physical addresses and phone numbers.

22.     Originally, DAVE told its users that the Data Breach, which happened in late June, did not result in the theft of Social Security numbers, only to change that via a subsequent notice wherein DAVE noticed that the thieves had also stolen encrypted Social Security numbers belonging to some 7.5 million DAVE users.

23.     According to DAVE, the breach occurred when the hackers infiltrated systems belonging to a former third-party service provider, Waydev.

24.     As of the filing of this complaint, DAVE has neither notified the Office of Civil Rights nor the California's Attorney General's Office as to the breach.[2]

25.     Recently, nearly one month after its initial post to its blog, DAVE issued a more formal "Notice of Data Breach," via its blog[3] and by e-mail.  In relevant part, that notice provided:

### NOTICE OF DATA BREACH

> Following up on our blog post from July 25th, we are providing our customers with more information about a recent cybersecurity incident affecting certain

---

[2] A search conducted of publicly available notices for data security breaches on August 23, 2020 returned no official notices of data breach to either the OCR or the California AG's office.  See, https://oag.ca.gov/privacy/databreach/list?field_sb24_org_name_value=&field_sb24_breach_date_value%5Bmin%5D%5Bdate%5D=04%2F01%2F2020&field_sb24_breach_date_value%5Bmax%5D%5Bdate%5D=08%2F24%2F2020 and https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited August 23, 2020).

[3] https://dave.com/blog/notice-of-data-breach/ (last visited August 23, 2020).

personal information. This post provides customers with information about the incident and outlines additional steps customers can take to help protect themselves.

**What Happened?**

As a result of a breach at a former third-party service provider, an unauthorized party illegally accessed and stole certain customer data at Dave between June 23 and July 1, 2020. As soon as Dave became aware of this incident on July 1, 2020, its security team quickly took steps to secure its systems, including customers' accounts. Dave immediately began an investigation, retained a leading cybersecurity firm, and notified law enforcement, including the Federal Bureau of Investigation ("FBI").

After the compromise at Dave's service provider, the unauthorized party was able to gain temporary access to Dave's systems and obtained certain Dave customer data. It appears this data is now posted online as available for sale on, or download from, illicit online marketplaces, which the FBI is aware of and is investigating.

**What Information Was Involved?**

The types of data that may have been exposed as a result of this incident included the following; however, not every customer had every data element exposed:

- First and last name
- Email
- Phone
- Date of birth
- Physical address
- Gender
- Profile image
- Customer application preferences (e.g., notification frequency, default tip percentage,

etc.)
- Hashed password
- Encrypted Social Security number

Importantly, the breach did not affect bank account numbers, credit card numbers, or records of financial transactions. Dave has no evidence of fraudulent customer account usage or that any customer has experienced any financial loss as a result of this incident. There is also no evidence to indicate that the unauthorized party accessed the encryption keys used to encrypt Social Security numbers. Social Security numbers were encrypted using AES-256 encryption and customer passwords were stored in illegible form using bcrypt, an industry-recognized hashing algorithm. Dave has, however, subsequently confirmed the likelihood that a party was able to "crack" or determine the plain text characters of at least some of the stolen hashed passwords.

**What Dave Is Doing**

Dave takes this matter seriously and continues to implement measures to secure customers' personal information. Dave is no longer working with the third-party service provider whose security breach enabled the unauthorized party to obtain customer data. Moreover, upon Dave's discovery of the incident, Dave's security team quickly took steps to secure its systems, including customers' accounts. Dave has forced a reset of all customer login credentials and is requiring all customers to change their passwords. When logging in, customers will receive instructions on how to change their password, which they should do immediately. Dave advised customers to change their passwords on any other sites on which they use the password they previously used with Dave. Dave's security team has also put in place additional technical measures to enhance account security, in consultation with independent cybersecurity experts, which will provide additional layers of security and protection.

Dave values its relationship with its customers and takes data protection and privacy issues seriously. Recognizing that identity protection is of paramount concern, we have partnered with Mastercard ID Theft Protection to provide you with complimentary identity theft resolution services through December 31, 2021. If you are not already enrolled in this or a similar service, please refer to the instructions below under *Steps You Can Take to Protect Your Information* and enroll at **https://mastercardus.idprotectiononline.com/**.

Dave regrets this incident and apologizes for any concern or inconvenience it may cause.

**What You Can Do**

First, in order to further protect your account and related information, we require that you create a new, strong password as soon as possible that you have never used elsewhere before. We also recommend that if you use your old password on other accounts, you should change those passwords too.

. . . .

26.    As a result of and in recognition of the seriousness of the breach, DAVE suggested that users reset their passwords, using passphrases when possible.  DAVE also offered its users enrollment in the Mastercard ID Theft Protection program through the end of 2021, which would provide help in making affidavits, assist in notifying all three major credit reporting agencies and placing a freeze on users' credit reports.  In addition, DAVE suggested that users be "vigilant about reviewing [their] financial accounts and monitoring free credit reports to detect any suspicious activity: . . . placing a fraud alert or security freeze on [their] account . . . ."  among other steps.  *Id.*

27.    Not only was the notice alarming to the Plaintiffs, but it provided no details as to how the hacking occurred, other than that it had occurred at a third-

party vendor.

28.     According to news reports, the full amount of stolen data was leaked to a hacking forum by the name of "RAID", making it freely available to any hacker or cyberthief who had accumulated enough "forum credits" within RAID to access it.  The dump was orchestrated by a group called "ShinyHunters," which has been behind the breach and sale of data from a number of companies over the past year, including those users of Zoosk and Chatbooks, two popular apps.

29.     According to the same reports, the data had been available for a number of weeks prior to the release by ShinyHunters.

30.     And, while the exfiltrated data included encrypted data, it appears that some of the DAVE passwords were exposed prior to the making of the data public.  While users' passwords, for instance, which were "hashed", hackers on other underground forums boasted about their ability to decrypt the passwords.

31.     In addition to Plaintiffs' data, it appears that the hackers may have also accessed Waydev's source code, which provides hackers with access to other platforms.

32.     The circumstances surrounding the breach and the ability to pivot from a third-party vendor's system to the Defendant's systems without detection point to the lack of controls and cybersecurity measures in use at DAVE to prevent such unauthorized use.

33.     Moreover, at the time the breach occurred, Waydev had concluded its work with the DAVE app.  It is rather apparent that DAVE did not have a rigorous system for off-boarding third-party vendors that would have prevented access to data once associated with DAVE users.  Moreover, DAVE failed to safeguard the PII it stored on users by monitoring criminal forums, dark web access forms, threat feeds, hacker chatter and paste sites for leaker credentials that could have easily spotted suspicious activity before the breach.

34.     It is clear that with all of these breaches that DAVE has disregarded the rights of Plaintiffs and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that DAVE and its vendors did not have adequately robust computer systems and security practices to safeguard PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiffs and Class Members with prompt and accurate notice of the Data Breach.

35.     As a result of Defendant's failure to implement and follow basic security procedures, PII is now in the hands of thieves. Plaintiffs and Class Members have had to spend, and will continue to spend, significant amounts of time and money in an effort to protect themselves from the adverse ramifications of the Data Breach and will forever be at a heightened risk of identity theft and fraud.

### A. DAVE'S Knowledge That It Was and Is a Target of Cyber Threats

36.     DAVE knew it was a prime target for hackers given the significant amount of sensitive PII collected from users of its app and stored on its systems. Indeed, this was not the first time that a fintech or banking app has been the subject of a data breach.

37.     In its Privacy Policies, DAVE noted the importance of each user's personal information, stating, in relevant part:

> 5. How We Secure Your Information
>
> We take your privacy and the security of your information very seriously, and have an information security program that includes administrative, technical, and physical measures to protect your information. Examples of measures we have taken to protect your

information include, but are not limited to:

- The use of industry standard encryption while transmitting and storing information.
- Mobile application session timeouts to ensure your information is protected when you put down your device without logging out.
- Passwords and personal identification numbers ("PINs") are only known by you. No employee, contractor or Third-Party Site has access to your Dave password or PIN. We will never ask for your password or PIN through our customer service teams.
- Two-factor authentication is provided to ensure your account can only be accessed by the device you register with.
- Our systems are periodically audited for security flaws.

38.     Despite representing that "[n]o employee, contractor, or Third-Party Site has access to your Dave password oror PIN," the details surrounding the Data Breach prove otherwise.

39.     DAVE's knowledge of the risks associated with maintaining such large amounts of PII is underscored by massive data breaches of other companies offering mobile applications or services popular with users. For example, in December 2019, the mobile gaming company Zynga, Inc., maker of the popular apps such as Words with Friends and Draw Something, announced a data breach in which almost "173 million usernames and passwords were compromised.[4]

40.     Yet another example is the August 2019 data breach of the StockX fashion and sneaker trading platform popular with teens, which exposed the personal data of over 6.8 million customers. These are not isolated incidents; the

---

[4] Phil Muncaster, Zynga Breach Hit 173 Million Accounts, Infosecurity Magazine (Dec. 23, 2019), https://www.infosecurity-magazine.com/news/zynga-breach-hit-173- million/ (last visited August 23, 2020).

number of data breaches is growing each year. According to a report by the Identity Theft Resource Center, "there were 1,473 data breaches [in 2019], a 17% increase over 2018's 1,257."[5]

41.     Despite being a holder of PII for millions of its users, DAVE failed to prioritize data security by adopting reasonable data security measures to prevent and detect unauthorized access to their highly sensitive systems and databases as well as ensure that systems belonging to its former vendors did not retain such sensitive data.

42.     DAVE had the resources to prevent a breach and to require and audit its vendors to adequately invest in data security.

43.     Yet, DAVE failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures to ensure that similar vulnerabilities were avoided or remedied and that Plaintiffs' and Class Members' PII was protected.

### B. DAVE Failed to Comply with FTC Guidelines

44.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[6]

### DAVE Failed to Comply With Its Regulatory Guidance and Meet Its Customers' Expectations

45.     Federal agencies have issued recommendations and guidelines to

---

[5] Chris Morris, Hackers had a banner year in 2019, Fortune (Jan. 28, 2010), https://fortune.com/2020/01/28/2019-data-breach-increases-hackers/ (last visited August 23, 2020).
[6] Federal Trade Commission, *Start With Security*, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Aug. 24, 2020).

---

temper data breaches and the resulting harm to individuals and financial institutions. For example, the FTC has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[7]

46.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[8] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

47.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[9]

48.    The FTC has brought enforcement actions against businesses for

_____

[7] Federal Trade Commission, Start With Security (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Aug. 23, 2020).

[8] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited Aug. 24, 2020).

[9]  FTC, *Start With Security*, *supra* note 23.

_____

CLASS ACTION COMPLAINT                    14

failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.   DAVE failed to properly implement basic data security practices. DAVE's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

50.   DAVE was at all times fully aware of its obligation to protect the PII of employees, providers and patients because of its position as an employer, contractor and healthcare provider.  DAVE was also aware of the significant repercussions that would result from its failure to do so.

## C. Plaintiffs and Class Members Suffered Damages

51.   The ramifications of Defendant's failure to keep its users' PII are long lasting and severe.  Once stolen, fraudulent use of such information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[10]

52.   The PII belonging to Plaintiffs and Class Members is private, sensitive in nature, and was left inadequately protected by Defendant, who did not obtain Plaintiffs' or Class Members' consent to disclose such information to any other person as required by applicable law and industry standards.

53.   Upon receiving the Notice, Plaintiffs immediately took action to investigate whether the breach resulted in any fraud to them.

---

[10]   2014 LexisNexis True Cost of Fraud Study, https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf (last visited Aug. 24, 2020).

54.    In the case of Plaintiff CALIXTE, she has experienced numerous attempts to reset her password and to access her e-mail accounts.

55.    All Plaintiffs have spent and continue to spend their valuable time to protect the integrity of their personal information, finances, and credit—time which they would not have had to expend but for the Data Breach.

56.    Plaintiffs and Class Members have suffered actual injuries from having their PII exposed as a result of the Data Breach, including, but not limited to: (a) damages resulting from taking the time to search for fraudulent activity; to change banks, bank accounts and debit and credit cards; to purchase credit monitoring and identity theft protection; to call their creditors to provide them with notice of the breach; and to otherwise attempt to protect their financial accounts; (b) damages to and diminution in the value of their PII—a form of intangible property that the Plaintiffs entrusted to DAVE as a condition of employment and the provision of services to patients; and (c) imminent and impending injury arising from the increased risk of fraud and identity theft.

57.    As a result of the Data Breach, Plaintiffs and Class Members will continue to be at heightened risk for financial fraud, identity theft, and attendant damages for years to come.

58.    The Data Breach was a direct and proximate result of DAVE's failure to: (a) properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

59.    Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately invest in data security measures, despite its

obligations to protect PII.  Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have prevented the intrusions into its systems and, ultimately, the theft of PII.

60.    As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives. The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[11]

61.    To date, DAVE has offered inadequate identity monitoring services to affected individuals given the type of data stolen.  They are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' PII.

62.    As a result of the Defendant's failures to prevent the Data Breach, Plaintiffs and Class Members have suffered, will suffer, or are at increased risk of suffering:

            a.  The compromise, publication, theft, and/or unauthorized use

---

[11] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013 available at https://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited July 2, 2020).

of their PII;

    b.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    c.  Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    d.  The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in its possession; and

    e.  Current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

63.    In addition to a remedy for the economic harm, Plaintiffs and Class members maintain an undeniable interest in ensuring that their PII are secure, remain secure, and are not subject to further misappropriation and theft.

## **CLASS ACTION ALLEGATIONS**

64.    Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Nationwide class defined as follows:

All persons whose PII was compromised as a result of the Data Breach announced by DAVE INC. in July and August of 2020 (the "Class").

65.    Excluded from the Class are the Defendant and any of its affiliates,

CLASS ACTION COMPLAINT    18

parents or subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

66.     Plaintiffs hereby reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

67.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

68.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include millions of individuals, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants. For example, injunctive relief may be entered in multiple cases, but the ordered relief may vary, causing Defendants to have to choose between differing means of upgrading their data security practices and choosing the court order with which they will comply. Class action status is also warranted because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

69.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  The Data Breach implicates approximately 7.5 million DAVE users.

70.     **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that

predominate over any questions affecting individual Class members. The common questions include:

    a. Whether Defendants had a duty to protect its users' sensitive PII;

    b. Whether DAVE knew or should have known of the susceptibility of its systems and its vendors to a data breach;

    c. Whether DAVE's security measures to protect its systems were reasonable in light of best practices recommended by data security experts;

    d. Whether DAVE was negligent in failing to implement reasonable and adequate security procedures and practices;

    e. Whether DAVE's failure to implement adequate data security measures allowed the breach of its data systems to occur;

    f. Whether DAVE's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unlawful exposure of the Plaintiffs' and Class Members' PII;

    g. Whether Plaintiffs and Class Members were injured and suffered damages or other losses because of DAVE's failure to reasonably protect its systems and data network; and,

    h. Whether Plaintiffs and Class members are entitled to relief.

71. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Rule 23(a)(3), Plaintiffs' claims are typical of those of other Class Members. Plaintiffs' damages and injuries are akin to other Class Members, and Plaintiffs seek relief consistent with the relief sought by the Class.

72. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because they are members of the Class they seek to represent; are committed to pursuing this matter against

Defendants to obtain relief for the Class; and have no conflicts of interest with the Class. Moreover, Plaintiffs' attorneys are competent and experienced in litigating class actions, including privacy litigation of this kind. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

73. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

74. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

75. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the

resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

   a. Whether DAVE owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

   b. Whether DAVE's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

   c. Whether DAVE's failure to institute adequate protective security measures amounted to negligence;

   d. Whether DAVE failed to take commercially reasonable steps to safeguard PII;

   e. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have
      reasonably prevented the data breach; and

   f. Whether DAVE failed to comply with its statutory and regulatory obligations.

76.   Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names, addresses and e-mail addresses of Dave users who are and patients' names and addresses affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing notice.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

77.   Plaintiffs restate, reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

78.   By collecting, storing, and using Plaintiffs' and Class Members' PII,

DAVE had a duty of care to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting this PII in its possession and that of its vendors from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing DAVE's security systems and data storage architecture to ensure that Plaintiffs' and Class Members' PII was adequately secured and protected; (b) implementing processes that would detect an unauthorized breach of DAVE'S security systems and data storage architecture in a timely manner; (c) timely acting on all warnings and alerts, including public information, regarding DAVE'S security vulnerabilities and potential compromise of the PII of Plaintiffs and Class Members; (d) maintaining data security measures consistent with industry standards and applicable state and federal law; and (e) timely and adequately informing Plaintiffs and Class Members if and when a data breach occurred notwithstanding undertaking (a) through (d) above.

79. DAVE had common law duties to prevent foreseeable harm to Plaintiff and Class Members. These duties existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, DAVE knew that it was more likely than not Plaintiffs and other Class Members would be harmed by such theft statutes based upon the FTC Act that also created a duty. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

80. DAVE had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the PII that was collected, stored, and processed by DAVE's computer systems.

81.     DAVE's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of DAVE's duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

82.     DAVE's duties to use reasonable data security measures also arose under the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.80, et seq., which imposes a duty to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure." Other states have statutes that impose a substantially similar duty of care.

83.     Plaintiffs and the Class Members entrusted their PII to Defendant with the understanding that DAVE would safeguard their information.

84.     The harm that has occurred is the type of harm the FTC Act (and similar state statutes) and the CCRA (and similar statutes of other states) were intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of defendants' failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and class members.

85.     DAVE knew or should have known that its computer systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII.

86.     DAVE knew or should have known that a breach of its systems and

data storage architecture would inflict millions of dollars of damages upon Plaintiff and the Class, and DAVE was therefore charged with a duty to adequately protect this critically sensitive information

87.     DAVE breached the duties it owed to Plaintiffs and Class Members described above, and thus was negligent. DAVE breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs and Class Members; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) timely and adequately informing its customers of the fact and extent of the Data Breach. These failures constituted both violations of the FTC Act (and similar state statutes) and the CCRA (and similar statutes from other states), as well as a breach of duties owed to Plaintiffs and Class Members under the common law. DAVE's violation of the FTC Act (and similar state statutes) and the CCRA (and similar statutes from other states) constitutes negligence per se and establishes the elements of duty and breach.

88.     Plaintiffs and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew of or should have known of the inherent risks in collecting and storing PII of Plaintiffs and the Class, the critical importance of providing adequate security of that PII, the current cyberscams being perpetrated, and that it had inadequate employee training and education and IT security protocols in place to secure the PII of Plaintiffs and the Class.

89.     DAVE also failed to exercise reasonable care and breached its common law duties when it failed to timely notify Plaintiff and class members of the Data Breach and when it falsely conveyed information regarding the scope of the Data Breach in its May 23, 2020 email to Wishbone users.

90.     But for DAVE's wrongful and negligent breach of its duties owed

to Plaintiffs and the Class Members, their PII would not have been compromised.

91.    As a direct and proximate result of DAVE's negligence, Plaintiffs and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by DAVE, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## SECOND CAUSE OF ACTION
### BREACH OF CONFIDENCE

92.    Plaintiffs restate, reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

93.    At all times during Plaintiffs and the Class Members' interactions with DAVE, DAVE was fully aware of the confidential and sensitive nature of Plaintiffs' and the Class Members' PII.

94.    As alleged herein and above, DAVE's relationship with Plaintiffs and the Class Members was governed by expectations that Plaintiffs' and the Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to the public or any unauthorized third parties.

95.    Plaintiffs and the Class Members provided their respective PII,

which was both confidential and novel, to DAVE with the explicit and implicit understandings that DAVE would protect and not permit their PII to be disseminated to the public or any unauthorized parties.

96. Plaintiffs and the Class Members also provided their respective PII to DAVE with the explicit and implicit understandings that DAVE would take precautions to protect the PII from unauthorized disclosure, such as following basic principles of encryption and information security practices.

97. DAVE voluntarily received in confidence Plaintiffs' and the Class Members' PII with the understanding that PII was confidential and novel and, as such, would not be disclosed or disseminated to the public or any unauthorized third parties.

98. Due to DAVE's failure to prevent, detect, and avoid the Data Breach from occurring by following best information security practices to secure Plaintiffs' and the Class Members' PII, DAVE caused Plaintiffs' and Class Members' PII to be disclosed and misappropriated to the public and unauthorized third parties beyond Plaintiffs' and the Class Members' confidence, and without their express permission.

99. But for DAVE's disclosure of Plaintiffs' and the Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and/or used by unauthorized third parties. The Data Breach was the direct and legal cause of the theft of Plaintiffs' and the Class Members' PII, as well as the resulting damages.

100. The injury and harm Plaintiffs and the Class Members suffered was the reasonably foreseeable result of DAVE's unauthorized disclosure of Plaintiffs' and the Class Members' PII. DAVE knew its computer systems and technologies for accepting, securing, and storing Plaintiffs' and the Class Members' PII had serious security vulnerabilities because DAVE failed to observe even basic information security practices or correct known security

1  vulnerabilities.

2      101.   As a direct and proximate result of DAVE's breach of confidence,

3  Plaintiffs and the Class Members have been injured and are entitled to damages

4  in an amount to be proven at trial. Such injuries include one or more of the

5  following: ongoing, imminent, certainly impending threat of identity theft

6  crimes, fraud, and other misuse, resulting in monetary loss and economic harm;

7  actual identity theft crimes, fraud, and other misuse, resulting in monetary loss

8  and economic harm; loss of the value of their privacy and the confidentiality of

9  the stolen PII; illegal sale of the compromised PII on the black market; mitigation

10 expenses and time spent on credit monitoring, identity theft insurance, and credit

11 freezes and unfreezes; time spent in response to the Data Breach investigating

12 the nature of the Data Breach not fully disclosed by DAVE, reviewing bank

13 statements, payment card statements, and credit reports; expenses and time spent

14 initiating fraud alerts; decreased credit scores and ratings; lost work time; lost

15 value of the PII; lost benefit of their bargains and overcharges for services; and

16 other economic and non-economic harm.

17              **THIRD CAUSE OF ACTION**
18        **INJUNCTIVE AND DECLARATORY RELIEF**

19     102.   Plaintiffs restate and reallege and incorporate by reference all

20 preceding paragraphs, as if fully set forth herein.

21     103.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.,

22 the Court is authorized to enter a judgment declaring the rights and legal relations

23 of the parties and grant further necessary relief. Furthermore, the Court has broad

24 authority to restrain acts, such as here, that are tortious and violate the terms of

25 the federal and state statutes described in this Complaint.

26     104.   An actual controversy has arisen in the wake of the Data Breach

27 regarding DAVE's present and prospective common law and other duties to

28 reasonably safeguard its users' PII, and whether DAVE is currently maintaining

---

CLASS ACTION COMPLAINT                    28

data security measures adequate to protect Plaintiffs and the Class Members from further data breaches that compromise their PII. Plaintiffs and the Class Members remain at imminent risk that further compromises of their PII will occur in the future. This is true even if they are not actively using DAVE's products or services.

105.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.   DAVE continues to owe a legal duty to secure users' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, the CCRA, and various state statutes; and

b.   DAVE continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and class members' PII.

106.   The Court also should issue corresponding prospective injunctive relief pursuant to 28 U.S.C. §2202, requiring DAVE to employ adequate security practices consistent with law and industry standards to protect its users' PII.

107.   If an injunction is not issued, Plaintiffs and the Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of DAVE. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and the Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

108.   The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to DAVE if an injunction is issued. Among other things, if another data breach occurs at DAVE, Plaintiffs and Class Members will likely be subjected to fraud, identify theft, and other harms described herein. On

the other hand, the cost to DAVE of complying with an injunction by employing reasonable data security measures is relatively minimal, and DAVE has a pre-existing legal obligation to employ such measures.

109. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at DAVE, thus eliminating additional injuries that would result to Plaintiffs, Class Members, and the tens of millions Dave users whose PII would be further compromised.

## FOURTH CAUSE OF ACTION
## CALIFORNIA'S UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, et seq.

110. Plaintiffs restate, reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

111. DAVE is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

112. DAVE violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

113. DAVE's unfair acts and practices include:

    a. DAVE failed to implement and maintain reasonable security measures to protect Plaintiffs' and class members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach. DAVE failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents in the education sector. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and class members whose PII has been compromised.

    b. DAVE's failure to implement and maintain reasonable

security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 et seq., and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 et seq.

c. DAVE's failure to implement and maintain reasonable security measures also lead to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of DAVE's inadequate security, consumers could not have reasonably avoided the harms that DAVE caused.

d. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

114. DAVE has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, et seq., the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, et seq., and California common law.

115. DAVE's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and the Class Members' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks,

1
2
3
4
        remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

5
6
7
a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and class members' PII, which was a direct and proximate cause of the Data Breach;

8
9
10
11
b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

12
13
14
15
16
17
18
        c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Class Members' PII, including duties imposed by the DTC Act, 15 U.S.C. § 45, California's Customer Records Ac, Cal. Civ. Code §§ 1798.80, et seq., and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, et seq., which was a direct and proximate cause of the Data Breach;

19
20
21
22
        d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and the Class Members' PII, including by implementing and maintaining reasonable security measures;

23
24
25
26
27
28
        e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq.; and California's Consumer Privacy Act, Cal. Civ. Code §§

---
CLASS ACTION COMPLAINT        32

1798.100 et seq.;

    f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and the Class Members' PII; and

    g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Class Members' PII, including duties imposed by the FTC Act, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*

116.   DAVE's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of DAVE's data security and ability to protect the confidentiality of consumers' PII.

117.   DAVE intended to mislead Plaintiffs and the Class Members and induce them to rely on its misrepresentations and omissions.

118.   Had DAVE disclosed to Plaintiffs and the Class Members that its data systems were not secure and, thus, vulnerable to attack, DAVE would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, DAVE received, maintained, and compiled Plaintiffs' and the Class Members' PII as part of the services and goods DAVE provided and for which its users paid (either through in-app purchases or through the inherent value of their PII) without advising Plaintiffs and the Class Members that DAVE's data security practices were insufficient to maintain the safety and confidentiality of Plaintiffs' and the Class Members' PII. Accordingly, Plaintiffs and the Class Members acted reasonably in relying on DAVE's misrepresentations and omissions, the truth of which they could not have discovered.

119.  DAVE acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and the Class Members' rights.

120.  As a direct and proximate result of DAVE's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial. These losses include the diminished value of Plaintiffs' and Class Members' PII. Because the integrity of Plaintiffs' and Class Members' PII is crucial to their future ability to engage in many aspects of commerce, including obtaining a mortgage, credit card, business loan, tax return, or even applying for a job, the diminishment of the integrity of that PII corresponds to a diminishment in value. In other words, Plaintiffs and Class Members have both present and future property interest diminished as a result of DAVE's unfair, unlawful, and fraudulent acts and practices.

121.  Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from DAVE's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request the following relief:

    a.  An Order certifying this case as a class action;

    b.  An Order appointing Plaintiffs as the class representatives;

    c.  An Order appointing undersigned counsel as class counsel;

    d.  For an award of restitution or disgorgement, in an amount to be determined;

    e.  For injunctive and declaratory relief, as may be determined

appropriate, to include:

i.   Prohibiting DAVE from engaging in the wrongful and unlawful acts described herein;

ii.   Requiring DAVE to protect, including through adequate encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii.   Requiring DAVE to delete, destroy, and purge the PII of Plaintiffs and Class Members unless DAVE can provide the Court a reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and the Class Members;

iv.   Requiring DAVE to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' PII;

v.   Requiring DAVE to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vi.   Requiring DAVE to audit, test, and train its personnel regarding any new or modified procedures;

vii.   Requiring DAVE to segment data by, among other things, creating firewalls and access controls so that if one area of DAVE's network is compromised, hackers cannot gain access to other portions of DAVE's systems;

viii.  Requiring DAVE to conduct regular database scanning and security checks;

ix.  Requiring DAVE to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiffs and Class Members;

x.  Requiring DAVE to routinely and continually conduct internal training and education, at least annually, to inform security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xi.  Requiring DAVE to implement, maintain, regularly review, and revise as necessary, a threat management program designed to appropriately monitor DAVE's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xii.  Requiring DAVE to meaningfully educate all class members about the threats they face as a result of the loss of their PII to third parties, as well as the steps affected individuals must take to protect themselves; and

xiii.  Requiring DAVE to implement logging and monitoring programs sufficient to track traffic to and from its servers; and n) Requiring DAVE to provide

ten years of identity theft and fraud protection services to Plaintiffs and Class Members;

f.  For an award of compensatory, consequential, statutory and general damages, including nominal damages, as allowed by law in an amount to be determined;

g.  An award of costs and expenses;

h.  For prejudgment interest on all amounts awarded;

i.  An award of attorneys' fees; and

j.  Such other and further relief as this court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a jury trial as to all issues triable by a jury.

DATED this 24th day of August 2020.

By ___/s/ Michael F. Ram_____

Michael F. Ram (SBN 104805)
Marie N. Appel (CA SBN 187483)
John A. Yanchunis*
Patrick A. Barthle*
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone:  (415) 358-6913
Facsimile:   (415) 358-6923
jyanchunis@forthepeople.com
mram@forthepeople.com
mappel@forthepeople.com
pbarthle@forthepeople.com

Joel Rhine*
Martin Ramey (CA SBN 221042)
Janet Coleman*
RHINE LAW FIRM, PC

1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Telephone:  (910) 772-9960
mjr@rhinelawfirm.com
jrr@rhinelawfirm.com
jrc@rhinelawfirm.com

Counsel for Plaintiff and the Putative Class

*Motions for *pro hac vice* admission to be
filed